case this morning is 23-8032, United States v. Barragan-Gutierrez. Mr. Mueller. Good morning, and may it please the Court. My name is Adam Mueller, and this Court appointed me to represent Mr. Barragan. I hope to reserve about four minutes for rebuttal. The parties in this case agree that the Supreme Court decision in Bruin recognized a new right that's retroactive on collateral review. But we disagree on how to define that right, and in turn whether that right applies to the conduct Mr. Barragan was convicted of committing. So I want to start with Bruin and the right it recognizes. Now, the government says Bruin merely recognized the right of American citizens to possess a weapon for self-defense purposes outside of the home without showing a special need. Now, that argument, that narrow reading of Bruin, might have held weight until Rahimi. But after Rahimi, I don't think that's a tenable reading of Bruin. How would you articulate the new right that were presented here? I would say that after Rahimi, Bruin and Rahimi together hold that all the people have a right to possess a weapon in their home. Full stop. Presumptive right. Full stop. There's no dispute here that we're talking about a weapon that qualifies as an arm, and there's no dispute that we're talking about conduct that is either keeping or bearing, however you want to look at it. So how do you reconcile that position with what we required in Greer to get through the F3 gate, that you have to say that the Supreme Court formally acknowledged the specific right that your client needs to prevail? So I think when you read Bruin, particularly in light of Rahimi, that test is satisfied. I recognize it's a high test. But could you say more about that? How is it actually satisfied under this sort of very broad reading of the Bruin post-Rahimi right? I'd like you to address how we apply that here for you to prevail under F3. So I think the way to look at it is this way. If you go look at the briefing and the focus of the government's arguments in Rahimi, nearly half of the brief from the government is an argument that the Second Amendment at step one of the Bruin test does not apply to people who are, quote, not responsible, right? That was half of their argument. Nine justices of the Supreme Court rejected that argument outright. The majority opinion does it in a paragraph. Chief Justice Roberts says, we reject the government's argument that Rahimi is not part of the people because he's not responsible. That's a vague term. That's not what the Second Amendment says. And Bruin says you start at step one by looking at the literal text of the Second Amendment. Let's say we agree with you. Do you win? How do you prevail even if we agree that your client is among the people? So I think if you agree with me that my client is part of the people, then we've satisfied our step one burden under Bruin, and we go to step two. And we look at, is there a tradition in this country that supports the notion that the government can criminalize the possession of a weapon for unlawful purposes? I mean, that's essentially the government's argument here, is that there's a tradition in this country of, excuse me, of prohibiting possession or disarming individuals who possess a weapon for unlawful purposes. I think that is far too broad of an understanding of the tradition in history. And I can walk through these, but my basic view is, the distinction we are drawing is possession for whatever purpose on the one hand, versus possession of a weapon to commit violence, to menace, or to threaten violence. There's a tradition in this country of prohibiting that, for sure. And the government goes through- I say possession, but this case is about possession and furtherance of a drug crime.  What work- are you saying that in furtherance is irrelevant for us to evaluate in the textual? No, Your Honor. I mean, my client pleaded guilty to possession and furtherance, and that requires an intent to promote, aid, facilitate. We're not disputing the facts that he pleaded guilty to. That's a different fact scenario than your client having a weapon in his home for self-defense. Right, but he also did- That would be a pure possession claim. I'm sure there's a lot out there right now.  We're not under that provision. Sure, absolutely. I think- but what he did not plead guilty to is possessing a weapon with the intent to commit violence, or with the intent to threaten to commit violence, or the intent to menace. And that's the distinction here. Well, but it was in furtherance of this drug transaction, which there's lots of history that drug transactions always involve a risk, a strong risk of violence. Yes, absolutely. And I'm not denying that in the abstract- Well, since you make your concession, it almost answers the case. I'm- you're saying that they could prohibit the possession of a gun if it was for the purpose of violence. And then it's just a small step from there to saying they could prohibit it if it is in connection with a criminal charge of a activity that has the inherent possibility of violence. I guess I would disagree, Your Honor, that it's a small step between possession for a purpose that is unconnected to violence versus possession of a weapon with an intent to commit violence, or intent to menace, or intent to assault, or something along those lines. Well, it's not- it's not quite so insignificant. I mean, he said- the defendant here said that the reason I have a gun at the house was to protect people from all the violence involved with having drugs and drug possession. Well, that's why I think, Your Honor, that is, in his words, sort of a self-defense purpose, right? And that's why the line between a non-violent purpose and a violent purpose is so important. And the statute already accounts for this. You know, the statute has prongs where you can be convicted of the actual use of the weapon, and it has extra penalties for brandishing the weapon or discharging the weapon, right? And brandishing and discharging are, I would say, the modern-day equivalent of, you know, carrying it so as to clearly indicate your violent intent, if we're going to look at how the law is back- that the government primarily relies on, in this case, to find it. So the government points to four sources of lie, as best I can tell, to justify the tradition here. The first were these going armed laws that we learned about in Rahimi, where an extra penalty or there would be an additional punishment for carrying weapons in a way that would, quote, terrify the king's subject. Again, subjects, excuse me. So again, that's an intent to menace, an intent to threaten, an intent to assault, something along those lines. But what my client was convicted of doing doesn't require proof of that. It just doesn't. If he'd been convicted of brandishing, then we are in a much different case. And I would concede that if he'd been convicted of brandishing a firearm and been subject to that seven-year enhanced penalty, or if he'd been convicted of discharging the firearm and subject to the 10-year enhanced penalty, then I think it fits, you know, after Rahimi, I would have a much harder argument. You're saying there's a missing fact here, and that is that the gun was actually used in a violent way? Used or threatened to be used in a violent way, yes. Or proof of an intent, that's what the gun was for. You know, you look at these... Your last statement is more consistent with what I thought you were saying, which is that you don't have to prove that it was used for this, just that that was the intent, that it would be available to be used if necessary in a violent way. Yeah, I think if he had pleaded guilty to an element, if there was an offense in this charge that said possession of a weapon in furtherance of a drug trafficking crime is proven by showing that you have, you know, to liken it to these statutes from Ohio and Connecticut, you possess the weapon with proof of a violent intention, and that's how the statutes that the government relies on were written, then if he pleaded guilty to that, I think it would be pretty analogous, and I think my argument would be much harder. But he didn't plead guilty to anything of that sort. He pleaded guilty to facilitating a drug trafficking crime with no regard to whether that threatened violence or he had an intent to threaten violence or an intent to menace or intent to terrify the king's subjects. And that's the distinction I'm trying to draw. I get that, and I think I understand your answer. But we have, you know, a multitude of cases that, you know, guns are part of the tools of the trade, and they exist for either, you know, the reason you possess a gun in a drug transaction is for self-protection or for intimidation and violence. And, you know, it seems like why wouldn't that presumption that's well-established in the law work equally well under 924C? So I think if there were—my best answer, Your Honor, is I think if there had been an admission to that fact or if that fact had been part of the elemental offense or if this had been charged differently, charged as use or charged as brandishing or charged as discharging, assuming the facts supported that— We can't make a presumption of inherent violence categorically. So I think—I mean, I hesitate to say that the Court can't presume that the combination of drugs and a gun in the area is not violent. I'm not going to stand here and make that argument. But what I am going to say is that constitutionally the way to properly address that concern is through charging use or discharge or brandishing or amending the statute to require a finding of proof that the possession had a violent intent. That's the distinction I'm trying to draw. So what was there evidence for a concession, I guess, in this plea? A concession that there was drug activity at the house? Yes. I think it's fair to say that there was—that was a factual basis as part of the plea. Yeah. If the Court doesn't have any questions at this time, I'd like to reserve some rebuttal. Just one last— Yes, absolutely. —new right retroactive. Is there—are you aware of any case, district or circuit, that's found this is a new right? Not—no, sir. I'm not at this point. Although I think the interpretations in analogous contexts have recognized that effectively we're talking about a new right, but I haven't—listen, I'd rather be on direct appeal. I thought—well, I know, and that's—but some of the post-Bruin cases did find there was no new right. Yes, I agree. And I think that's one of the reasons that Judge Matheson granted the certificate of appealability. Okay. Thank you, counsel. Thank you. If you may, please, the Court. William Glasser for the United States. Beragin Gutierrez's Section 2255 motion is neither timely nor meritorious, and the district court correctly dismissed his motion because the Second Amendment, as interpreted by Bruin, Rahimi, and all the Court's cases, does not protect a right to possess firearms in furtherance of criminal activity, particularly, as relevant here, the criminal activity of drug trafficking. So how would you state the right that Bruin establishes? So, Your Honor, I think if you look at the first paragraph of Bruin, it effectively established two things that were not previously clear from Heller and McDonald. So first, in Bruin, the Court said that the parties agree that the right to possess firearms in the home extends outside of the home as a right to public carry, and then Bruin said there was disagreement among the parties about whether that right to public carry could be cabined by a requirement of showing of a special need for self-defense. And it was there that Bruin held that you don't have to show a special need for self-defense in order to carry publicly. So those were the things that Bruin established that weren't entirely clear from Heller and McDonald. But what has been entirely clear in all the Supreme Court's cases is that the right to possess firearms does not extend to possessing them for unlawful purposes. So as Heller said, it was not a right to keep and carry firearms for any weapon whatsoever, in any manner whatsoever, and for whatever purpose. Heller referred back to the Cruikshank case from 1875, which said that the Second Amendment protects bearing firearms for lawful purposes. McDonald, four justices there, described it as a right to keep and bear arms for lawful purposes. Bruin said that there were well-defined restrictions on the intent for which one can carry firearms. And then Rahimi, again, said that the right was never thought to sweep indiscriminately. So consistently, through all the Supreme Court's cases, the Court has understood it doesn't protect a right to possess firearms for unlawful purposes. So there's no new right here? The new right that I just discussed with Judge Rossman doesn't apply to the circumstances here, Your Honor. And that's why I don't think that the retroactivity question, I mean, you know, we concede that it's- Why do you concede it? We concede it's retroactive to the limited degree it exists. So we couldn't now say, let's say someone was challenging a state law, I'm not aware of any federal laws, but a state law like that in New York that required you to show a special need for self-defense in order to carry a firearm outside the home. I think in that case, it would be, you know, Bruin would reply retroactively there, because that's clearly within the new right that was recognized by Bruin. And part of the reason we addressed it, Your Honor, is it was within the situation of appealability. So we felt compelled to address it. Your position is only that the right is not the right right, so to speak. The right that-  That the appellant needs to get through F3 does not resolve his case. Is that a fair understanding of the government's position? That's exactly correct, Your Honor. And I think, you know, the right that he's possessing here, he possesses these firearms in his home. So to the extent that he is asserting sort of a right of every person, in his words, all the people to possess a firearm in the home, that's something that he could have brought under Heller, because Heller established an individual right to possess firearms within the home. So because he could have brought that claim under Heller, now again, we think he has to show more than just sort of this right to possess a firearm. We think he has to show a right to possess a firearm in furtherance of drug trafficking activity. But to the extent he's even right about the- even correct about the right he's asserting, that's something he could have brought under Heller and that wasn't newly recognized under Bruin. So that, I think, easily deals with the timeliness under Section 2255 F3. And then on the merits, we think that we have plenty of good arguments, both based in the text, the Supreme Court precedent, and in history, for why the right has never extended to possessing firearms for unlawful purposes like drug trafficking. Well, let me ask a question there. I think you earlier said that possession in furtherance of criminal activity would not be covered by Second Amendment protections. And, you know, I get it for crimes of violence. I think maybe the drug trafficking is somewhere in between. But what if the government, what if Congress criminalized possession of a firearm in furtherance of tax fraud? So, you know, crimes clearly don't have elements of violence or potential violence. Would your theory apply to that type of crime? Yes, Your Honor. In our view, that would still be constitutional. But you don't need to address that. I think there's a reason that Congress, in enacting Section 924C, selected crimes of violence and drug trafficking crimes. Those are the types of crimes where the involvement of a gun particularly heightens the danger. We're looking at your limiting principle.  Yeah, and, Your Honor, and I think Congress, if a more extravagant Congress could really clamp down on gun possession for a myriad of crimes. Sure. That's right, Your Honor. And so we don't have a historical example, I think, that necessarily goes sort of far beyond the drug trafficking context. We point to, for example, the robbery and burglary statutes. And I think those are closely analogous to drug trafficking in that just as drug trafficking has a heightened risk of violence when guns are involved, so does burglary. So it's possible, you know, you might disagree with our sort of broadest articulation of the principle. But our understanding, based on the repeated statements from the Supreme Court, is that when you possess a firearm for any unlawful purpose, to promote any unlawful activity, whether that's the kind of unlawful activity that has a heightened risk of violence or not, that's just not simply something that's protected by the Constitution. And that's actually consistent with how the Supreme Court has interpreted other amendments, such as the First Amendment. So in the First Amendment context, it's not simply the case that you don't have a First Amendment, or you don't have something that might incite violence. It's also the case that there are other things that can, that you can't, your speech is not protected if it's in furtherance of other illegal activities, such as, for example, picketing in furtherance of unlawful objectives. I think we cite the International Brotherhood case. So in the First Amendment context, the Supreme Court hasn't sort of cabined the principle to just speech that incites violence, but has actually said that there's other unlawful activities for which you don't have a First Amendment right. And we think the same principle applies in the Second Amendment context. But again, you don't have to decide that here. Well, most of the cases that you cite, founding era cases, et cetera, do have, as Mr. Mueller stated, they do have an element of violence, brandishing, or actual use. You know, so to some extent, this provision is an extension to mere possession in furtherance. I mean, applying this history and tradition test that we're evaluating, I mean, how do we draw the line between cases that suggest use or brandishing is important, like it was in Rahimi versus a case where it's not? Sure, Your Honor. So first of all, I think you should follow the Supreme Court's lead in stating the principle more broadly that any unlawful purpose is outside the Second Amendment. But to the extent you engage in the sort of more detailed historical inquiry, we do actually, in my view, cite historical statutes that don't require that sort of brandishing or threatening use. So for example, in footnote 8, we cite some of the burglary and robbery statutes. And it's true, as Mr. Mueller points out, that some of those burglary statutes spoke about possessing firearms so as to clearly indicate a violent intention. Even that, I don't think, requires use or brandishing. It's just possession clearly indicating a violent intention. But some of those statutes didn't even have that language, clearly indicating a violent intention. It was just the fact that you possessed those arms, those dangerous weapons, while committing the crime of burglary. And also, in footnote 9, we cite the laws punishing the possession of a pistol or offensive weapon with intent to assault any person. Again, the intent was the only thing that needed to be proven there. You didn't actually have to have accomplished the assault by brandishing the firearm. So we think, even as a historical matter, we're on solid ground in saying that section 924C is constitutional as applied to possession and not simply to use or brandishing. And I think the facts of this case and the facts to which Mr. Baraggan-Gutierrez pleaded indicate that he can't now make the claim. And I understand him to have sort of backed off the claim a little bit here at the lectern. But his claim that he merely possessed the firearms, and that was at the same time that he was drug trafficking, he pleaded guilty to possessing them in furtherance of drug trafficking. And in fact, there's statements from a confidential source who said that he possessed the firearm because there had already been drugs and cash stolen from his home. Is that in the PSR? Yes, Your Honor. It's in the PSR, paragraph 8. It's a very long paragraph, so it's hard to find it in that paragraph. You can also look at paragraph 17 of the PSR, where an unnamed co-conspirator, I'm not sure if that was one of the charged co-conspirators in this case or not, but a co-conspirator said that Mr. Baraggan-Gutierrez told those that lived in the house with him to, quote, use the gun if someone tried to break in or the cops came. And there were no objections to the PSR? Not to that part of the PSR, Your Honor. So I think for all these reasons, whether as a matter of timeliness or on the merits, this court should affirm the district court's decision that dismissed Mr. Baraggan-Gutierrez as Section 25. In your supplemental brief, you made a suggestion that the Second Amendment does not apply to non-citizens. Sure. Could you elaborate on what the government's position is on that? So, Your Honor, that's the consistent position that we've taken, and the Eighth and the Fifth Circuit have agreed with us since Bruin. Many circuits agreed with us before Bruin as well. We didn't raise that, though, as a defense to his Section 2255 motion because, in our view, that sort of wasn't the issue here. He's not charged under 18 U.S.C. Section 922 G5, which applies to the unlawfully present aliens. Instead, we just charged him under Section 924 C, and we think that's constitutional as applied even to citizens. We just raised that because he spent so much time talking about the people and the types of people who are protected by the Second Amendment, which we think is essentially a non-issue in this context, that regardless of whether someone is part of the people, regardless of whether they're responsible, law-abiding, we can set all those things to the side, that no person, no U.S. citizen, otherwise law-abiding, has a right to possess firearms in furtherance of unlawful activity. But if we were to reach it, if we were to reach it in the 924 context, the government's position would be that he would not be, he would not have a Second Amendment claim. That's correct, Your Honor. If he were, we have made the argument in other cases, and we would certainly make the argument if he were charged under Section 922 G5, we would certainly make the argument he doesn't have the right to possess any firearm for any purpose. Does this record show that he was an illegal person without a right to stay in the country,  Your Honor? It doesn't. I didn't think so. I mean, I didn't think, I didn't see where his status was cited to us in this case. Your Honor, the PSR does not indicate his exact immigration status. It indicates that he came to the United States as a minor, and that he's subject to removal after these proceedings. So again, we don't think, that's I think one of the many reasons we weren't pressing this as a reason specifically to deny his Section 2255 petition. Well, the fact that there's nothing in the record to support his status would be a pretty good reason not to argue it. Well, yes, Your Honor. The reason we raise this in response to his arguments about the people is it's sort of ironic for him to be claiming that he has a right to possess a firearm because it applies to all U.S. citizens when he actually isn't a United States citizen. But it's an academic point in this case. Do you agree? That's correct, Judge Rossman. Well, we could say it's academic if the record shows that he was not a citizen. But we don't know that. Your Honor, we know he is not a citizen. We know that he is a Mexican citizen. The record establishes that? That's correct, Your Honor. I think page one of the PSR. Oh, okay. So we know he's not a citizen. We don't know whether or not his immigration status was otherwise lawful at the time of his firearm possession. There's a removal order that's pending? That's correct, Your Honor. If the Court has no further questions, we would ask it to affirm. Thank you, Counsel. Mr. Mueller, you have some rebuttal? Just a few points I'd like to make in the time I have left. Starting with the timeliness and the Heller question, the government argued that we could have brought Mr. Bergeron could have brought this claim after Heller and before Bruin. And that shows, essentially, that this is untimely under F3. I disagree with that. And I point this Court in particular to the Third Circuit decision in range and the Fifth Circuit decision in Rahimi. In Rahimi, ultimately, of course, the Supreme Court reversed and upheld the statute. But the panel initially upheld the statute after Heller and before Bruin, applying Heller. Then it was Bruin that changed the Court's analysis and said, oh, no, okay, actually the people here mean something more than law-abiding and responsible. And again, that part of the decision, the Supreme Court didn't question. All nine justices agreed that the Second Amendment, by its terms, is not limited to only law-abiding and responsible individuals. But Bruin itself uses that phrase many times, law-abiding citizens, does it not? I'm sorry, say that again, Your Honor. Doesn't Bruin use that phrase itself? It does, Your Honor. So I'm confused why anybody argues that that phrase has somehow disappeared. Excuse me. Well, Your Honor, I mean, I take the view that the Supreme Court took in Rahimi, which is that those words were not meant to define the outer limits of who is entitled to Second Amendment protections. That's what Chief Justice Roberts says. And he flatly rejects the government's argument that the Second Amendment is limited only to those who are responsible. Now, this is a law-abiding case, I guess, not a responsible case. But the logic is the same. Can we make the retroactivity decision, or do we need to wait for the Supreme Court to decide that? In this case, you can make the retroactivity decision. It's my understanding this is a first 2255 petition, not a second or successive petition. So under this, I think under even Supreme Court precedent, the Court of Appeals can be the first to decide that the newly recognized net right is retroactive on collateral review. If I were here on a second or successive petition, my argument would be even harder than it is. I wanted to quickly talk about the citizen issue. You know, it hasn't really, it isn't really presented in this case. I mean, the government had multiple opportunities to argue that I should lose, my client should lose at step one because he's not a citizen, waited until the final brief to make that point. So I'd ask this Court not to consider it. But in any event, the literal text of the Second Amendment doesn't say citizen. And it certainly could have. The 15th Amendment talks about citizens. So the, you know, the framers certainly could have limited the right expressly to citizens if they wanted to. Would you concede, though, that your client is an illegal alien here without approval? I would not concede that, Your Honor. I would concede that he's not a citizen. But I'm not sure about his actual immigration status. I don't think the record is clear on that. And the fact that there might be a removal order now isn't surprising. He has three convictions out of this case, all of which I think are subject to removal. So that doesn't prove the underlying question of lawfulness in the country. I see my time is up. If the Court doesn't have other questions, I'd ask this Court to reverse. Thank you, counsel. You're excused. Appreciate the fine arguments. Case is submitted.